UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62541-CIV-MORENO/SELTZER

JETSMARTER INC.,
a Delaware corporation,

       Plaintiff,

vs.

JOSEPH BENSON,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's Motion to Dismiss and/or for More Definite Statement ("Motion to Dismiss" or "Motion") (DE 12) filed by Defendant Joseph Benson and was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida (DE 15).  The undersigned has carefully reviewed the file, has heard argument of counsel (DE 25), and is otherwise fully advised in the matter.  For the reasons set forth below, the undersigned RECOMMENDS that Defendant's Motion (DE 12) be DENIED.

I.    PROCEDURAL HISTORY

Plaintiff filed a Complaint in this Court setting forth the following nine counts:  Count 1 – Injunctive Relief, 18 U.S.C. § 1836(b)(3)(A), Misappropriation of Trade Secrets; Count 2 – Damages, 18 U.S.C. § 1836(b)(3)(B), Misappropriation of Trade Secrets; Count 3 – Breach of Fiduciary Duty; Count 4 – Tortious Interference with Business Relationships; Count 5 – Conversion; Count 6 – Theft of Trade Secrets, Florida Statutes § 688.004,

Damages; Count 7 – Theft of Trade Secrets, Florida Statutes § 688.003, Injunctive Relief; Count 8 – Damages for Breach of Contract; and Count 9 – Breach of Contract, Injunctive Relief (DE 1).

Thereafter, Defendant filed the instant Motion, seeking to dismiss Plaintiff's Complaint or, alternatively, to obtain an order from this Court directing Plaintiff to provide a more definite statement (DE 12). Plaintiff responded ("Response") (DE 17) to the Motion, and Defendant replied ("Reply") (DE 18) thereto.[1] Respective counsel were also afforded oral argument (DE 25).

The matter is now ripe for decision.

II.    BACKGROUND

Plaintiff JetSmarter is a corporation organized under the laws of Delaware with its principal place of business in Fort Lauderdale, Florida. Complaint ¶ 2 (DE 1). Plaintiff is in the business of providing a members-only mobile marketplace for shared and private jet charters throughout the United States and foreign countries. Id. The Complaint explains that Plaintiff offers a private club membership with such benefits as the ability to reserve whole aircraft and shared private charter flights via its proprietary mobile application.[2] Id. ¶ 8. Plaintiff has expended substantial resources not only on acquiring membership and developing brand recognition but also on safeguarding the confidentiality of its 12,000 members' personal and contact information. Id. ¶ 9. Given the aggressive competition in

---

[1] Plaintiff has filed a Verified Motion for a Preliminary Injunction (DE 10). The undersigned is entering a Report and Recommendation on the Motion for a Preliminary Injunction contemporaneously with the instant Report and Recommendation.

[2] Plaintiff does not own or operate the planes; rather, it contracts with licensed and certified private plane operators to operate the flights.

the industry, Plaintiff, largely through its sales associates, business development representatives, and shuttle experience managers, has devoted significant resources to cultivating and enhancing its customer relationships.  Id. ¶¶ 10-12.  Plaintiff has also devoted substantial resources to developing and maintaining a Customer List that contains, among other things, the names, telephone numbers, and email addresses of its members, as well as the purchasing history and specific travel preferences of particular clients.  Id. ¶ 13.  To protect the confidentiality of its Customer List, Plaintiff has limited access only to employees on a need-to-know basis, and it has maintained the Customer List on a restricted, password-protected system to which only employees who require access to perform their jobs are given such access.  Id. ¶ 15.

Defendant Joseph Benson is currently a resident of Cook County, Illinois.  Id. ¶ 3. From December 2015 through June 2017, however, Defendant was employed by Plaintiff, working and residing most of that time in South Florida.  Id.  The Complaint explains that during the course of his employment, Defendant worked as a sales associate, business development representative, and shuttle experience manager.  Id. ¶ 17.  To perform these job responsibilities, Defendant was granted access to the Customer List, to Plaintiff's customers, and to Plaintiff's other confidential information.  Id. ¶ 23.

On March 1, 2016, Defendant executed a JetSmarter Inc. 2016 Omnibus Performance Award Plan ISO Award Agreement ("Award Agreement"), wherein Defendant expressly agreed to be bound by all of the terms of the Award Agreement, including the Stock Restriction Agreement ("SRA").  Id. ¶ 20; see SRA (Ex. B to Complaint at 13-27 (DE 1-2)).  In separate sections, the SRA addresses unauthorized disclosures, non-competition, non-solicitation, interference with business relationships, and proprietary rights.  The

3

provision addressing unauthorized disclosure of confidential information states, in pertinent

part:

> The Stockholder agrees and understands that he or she may
> be exposed to and may receive information relating to the
> confidential affairs of the Corporation . . . including . . .
> customer information . . . and other forms of information
> considered by the Corporate Group to be confidential or in the
> nature of trade secrets (including . . . customer and supplier
> lists . . .) (collectively, "Confidential Information"). . . . The
> Stockholder agrees that at all times that the Stockholder is the
> beneficial owner of any Shares and thereafter, except in the
> good faith performance of his or her duties to the Corporation
> or any other member of the Corporate Group, the Stockholder
> shall not disclose any Confidential Information, either directly
> or indirectly, to any Person without the prior written consent of
> the Corporation and shall not use or attempt to use any such
> information in any manner other than in connection with his or
> her Service for the Corporation or any other member of the
> Corporate Group . . . . This confidentiality covenant has no
> temporal, geographical or territorial restriction. Upon the
> Stockholder's Termination of Service, the Stockholder shall
> promptly supply to the Corporation all property, keys, notes,
> memoranda, writings, lists, files, reports, customer lists,
> correspondence, tapes, disks, cards, surveys, maps, logs,
> machines, technical data and any other tangible product or
> document which has been produced by, received by or
> otherwise submitted to the Stockholder during or prior to his or
> her Service for the Corporation . . . .

Id. ¶ 11.1 (first emphasis in original; remaining emphasis added).

In addition, the provision addressing interference with business relationships states,

in pertinent part:

> During the Restriction Period[3] (other than in connection with

---

[3] The SRA's Restriction Period is two years following the Stockholder's Termination
of Service. See SRA ¶ 11.2 (DE 1-2) ("By and in consideration of the Corporation entering
into the . . . Award Agreement to which this Agreement is attached . . . the Stockholder
agrees that . . . for two years following the Stockholders Termination of Service (the
"Restriction Period") . . . . (first emphasis added)). The Restriction Period is extended for

carrying out his or her responsibilities for the Corporate Group), the <u>Stockholder shall not directly or indirectly contact, induce or solicit</u> (or assist any Person to contact, induce or solicit) <u>any customer, client</u>, vendor or business partner of, or other Person <u>that has a business relationship with, any member of the Corporate Group to</u> terminate its relationship or otherwise cease doing business in whole or in part with any member of the Corporate Group, or <u>directly or indirectly interfere with</u> (or assist any Person to interfere with) <u>any material relationship between any member of the Corporate Group and any of their respective customers, clients</u>, vendors, business partners or other Persons that have a business relationship with such member of the Corporate Group so as to cause harm to any member of the Corporate Group . . . .

SRA ¶ 11.4 (DE 1-2) (emphasis added).[4]

Plaintiff terminated Defendant's employment on June 23, 2017. Complaint ¶ 25 (DE 1). In its letter advising Defendant of his termination, Plaintiff directed Defendant to return all property and confidential information belonging to Plaintiff, and it reminded him of his ongoing non-competition and non-disclosure obligations. <u>Id.</u> ¶ 26. Specifically, Plaintiff's Senior Human Resources Manager wrote:

Please note that you must return all JetSmarter property, including identification cards or badges, access codes or devices, keys, laptops, computers, telephones, hand-held electronic devices, electronically stored documents or files, physical files and any other JetSmarter property and <u>any confidential information in your possession no later than June 23, 2017</u>. Please return this property and information to Andrea Wolniewitz.

---

any period during which the Stockholder is in breach of the SRA's restrictive covenants. <u>See id.</u> ¶ 11.5.

[4] On December 31, 2015, prior to his executing the Award Agreement, Defendant executed an Incentive Stock Option Agreement ("ISO Agreement"), which contained similar restrictions on his utilizing Plaintiff's confidential information and similar non-competition provisions as those in the Award Agreement. Complaint ¶ 18 (DE 1); <u>see</u> ISO Agreement (Ex. A to Complaint (DE 1-1)).

> I would like to take this opportunity to remind you of your
> continuing non-compete, non-disclosure, and confidentiality
> obligations that you are required to comply by after termination
> of your employment with the Company. Employee
> Non-Competition, Non-Disclosure, Confidentiality And Patent
> And Invention Assignment Agreement that you executed upon
> commencement of your employment is enclosed for your
> convenience. JetSmarter takes compliance with confidentiality
> and non-compete obligations very seriously and will diligently
> enforce its rights.

June 23, 2017 Letter of Termination (Ex. C to Complaint (DE 1-3)) (emphasis added).

Defendant did not return the Customer List to Plaintiff. Moreover, the Complaint alleges that, since Defendant's termination, he has violated the restrictive covenants contained in the ISO Agreement and the Award Agreement by misappropriating Defendant's proprietary and confidential information, including the Customer List containing the contact information for Defendant's members and prospective members. Complaint ¶ 27 (DE 1). According to Plaintiff, Defendant is intentionally competing and interfering with Plaintiff's business relationships by contacting the individuals on the Customer List in an effort to refer them to Plaintiff's competitors. Id. ¶¶ 27-29.

III.    LAW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. And "on the

6

assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).  "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Boyd v. Warden, Holman Correctional Facility, 856 F.3d 853, 864 (11th Cir. 2017) (quoting Iqbal, 556 U.S. at 679).

IV.   ANALYSIS

   A.   Motion to Dismiss

      1.   Count 1 – Injunctive Relief, 18 U.S.C. § 1836(b)(3)(A), Misappropriation of Trade Secrets

Counts 1 and 2 of Plaintiff's Complaint raise claims under the Defend Trade Secrets Act of 2016 ("DTSA" or "Act"), Pub. L. No. 115-153, 130 Stat. 376. That statute creates a private cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Among other things, the Act permits federal district courts to grant injunctive relief "to prevent the actual or threatened misappropriation" of a trade secret, subject to certain conditions. Id. § 1836(b)(3)(A)(i). Count 1 of Plaintiff's Complaint seeks injunctive relief directing Defendant to return the Customer List and to prevent any further misappropriation and further utilization thereof. Complaint ¶¶ 31-42 (DE 1).

Seeking dismissal of Count 1, Defendant argues that Plaintiff has failed to plausibly allege that the Customer List was misappropriated. In the context of the DTSA, "misappropriation" is defined as the:

   (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

   (B) disclosure or use of a trade secret of another without express or implied consent who –

      (i) used improper means to acquire knowledge of the trade secret;

      (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –

         (I) derived from or through a person who had used improper means

8

to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that –

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5).  The statutes goes on to define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Id. § 1839(6)(A).

The question, then, is whether Plaintiff has plausibly alleged that Defendant knowingly misappropriated the Customer List by improper means.[5]  As already noted, the Complaint alleges that the Customer List is a compilation of information not commonly available to the public.  Complaint ¶ 15 (DE 1).  And Plaintiff has sought to protect the confidentiality of that information not only by limiting access to employees on a need-to-know basis, but also by maintaining the Customer List on a restricted, password-protected system to which only employees who require access to perform their jobs are given such access.  Id.

With respect to Defendant's knowledge, the Complaint explains that, by signing the

---

[5] For purposes of his Motion to Dismiss, Defendant does not argue that the Customer List is not a "trade secret" or that Plaintiff is not the "owner" of the Customer List, as those two terms are defined in the statute.  See 18 U.S.C. § 1839(3) & (4).

Award Agreement granting him an option to purchase JetSmarter stock in consideration of his continued employment, Defendant agreed "to be bound by all the terms expressly set forth in that agreement." Id. ¶ 20. The Award Agreement, in turn, expressly designates the Customer List as confidential information, and prohibits Defendant from utilizing that information other than in connection with his service for JetSmarter. Id. ¶ 21; see SRA ¶ 11.1 (DE 1-2). Finally, upon terminating Defendant's employment, JetSmarter directed Defendant to cease using all confidential information and reminded him of his continuing non-compete, non-disclosure, and confidentiality obligations to Plaintiff. Complaint ¶ 26; see June 23, 2017 Letter of Termination (DE 1-3).

The undersigned concludes that Plaintiff's Complaint more than adequately alleges that, by retaining the Customer List following his termination, Defendant ignored his obligations under the Award Agreement and, therefore, knowingly misappropriated the list by improper means.

      2.    Count 2 – Damages, 18 U.S.C. § 1836(b)(3)(B), Misappropriation of Trade Secrets

In addition to injunctive relief, the DTSA provides for damages for owners injured by the misappropriation of their trade secrets. 18 U.S.C. § 1836(b)(3)(B). That is the remedy that Plaintiff seeks in Count 2 of the Complaint. Complaint ¶¶ 43-45 (DE 1).

That parties appear to agree that Counts 1 and 2 run in tandem: if Count 1 is adequately pleaded, then Count 2 is as well. The undersigned notes only that Plaintiff has adequately pleaded damages: when Defendant retained the Customer List and used it to solicit Plaintiff's customers and clients, Defendant interfered with and harmed Plaintiff and its business relationships. Id. ¶¶ 15-16, 28-30.

Defendant, however, does object to what he perceives as Plaintiff's improper commingling of those two counts. Stated differently, Defendant contends that, by reincorporating and realleging Count 1's allegations into Count 2, Plaintiff has converted its pleading into a "shotgun complaint." The undersigned does not agree.

"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). In that scenario, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," leaving the defendant unable "to frame a responsive pleading." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). But so long as a complaint "is minimally sufficient to put a defendant on notice of the claims against him," it "will not fail for mere surplusage." Bailey v. Janssen Pharm., Inc., 288 F. App'x 597, 603 (11th Cir. 2008) (per curiam).

Plaintiff's Complaint is far from a shotgun pleading. Each count of the Complaint alleges a distinct legal theory. And Count 2 merely realleges the general allegations contained in paragraphs 1 through 30, as well as paragraphs 32 through 36, paragraphs that are relevant to both Counts 1 and 2. The undersigned, therefore, concludes that Plaintiff has not inappropriately commingled the allegations contained in Count 1 with those in Count 2.

### 3. Count 3 – Breach of Fiduciary Duty

A claim for breach of fiduciary duty contains three elements: (1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach. Minotty

v. Baudo, 42 So. 3d 824, 835-36 (Fla. 4th DCA 2010) (citing Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)). "It is well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer." Bank of Am., N.A. v. Crawford, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013) (internal quotation marks omitted); see Connelly v. Special Rd. & Bridge Dist. No. 5, 126 So. 794 (Fla. 1930); Life Mktg. of Fla., Inc. v. A.I.G. Life Ins. Co., 588 So. 2d 663, 665 (Fla. 5th DCA 1991) (per curiam). "[A]bsent agreement to the contrary, there is nothing to preclude an agent from competing with his principal after the termination of their relationship." New World Fashions, Inc. v. Lieberman, 429 So. 2d 1276, 1277 (Fla. 1st DCA 1983). What an employee may not do, however, is "engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." Fish v. Adams, 401 So. 2d 843, 845 (Fla. 5th DCA 1981) (emphasis added); see also Connelly, 126 So. at 798 (An agent "is precluded from using for his own advantage information or material acquired by him in the course of his employment.").

Plaintiff has pleaded sufficient facts to state a plausible claim for breach of fiduciary duty. The Complaint alleges quite clearly that Defendant owed a fiduciary duty to Plaintiff: Defendant was hired by Plaintiff as a sales associate, and he later held positions as a business development associate and as a shuttle experience manager. Complaint ¶ 17 (DE 1). As an employee of JetSmarter, Defendant held a position of trust and confidence with regard to the confidential information provided to him (including the Customer List), information that was necessary to Defendant's performance of his job-related duties. Id. ¶¶ 23, 47. Moreover, by signing the Award Agreement, Defendant agreed that the

Customer List was confidential and would not be used for any purpose unrelated to his employment with JetSmarter. Id. ¶¶ 21-22; see SRA ¶ 11.1 (DE 1-2).

The Complaint likewise sufficiently alleges that Defendant breached his fiduciary duty and that the breach caused harm to Plaintiff. Following the termination of his employment, Defendant retained the Customer List in violation of the Award Agreement he had executed with Plaintiff, and he used the information on the list to contact JetSmarter's current and prospective customers. Complaint ¶¶ 27-28, 49-51 (DE 1). Defendant's conduct, the Complaint alleges, had the direct effect of causing Plaintiff's customers to cease doing business with it, to Plaintiff's detriment. Id. ¶¶ 28-30.

The undersigned concludes that Plaintiff has more than adequately stated a claim for breach of fiduciary duty.

### 4.    Count 4 – Tortious Interference with Business Relationships

A claim for tortious interference with business relationships consists of four elements: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994). The Complaint contains sufficient allegations to satisfy each element.

As noted in greater detail above, the Complaint explains that Plaintiff has expended significant effort to establish and maintain relationships with its customers in the midst of a highly competitive industry. Complaint ¶¶ 9-13 (DE 1). As part of his job-related duties with JetSmarter, Defendant was made privy to these business relationships and was charged with helping to cultivate them using Plaintiff's confidential information. Id. ¶¶ 23-

24.    After Plaintiff terminated his employment, Defendant retained its confidential information and used that information to solicit Plaintiff's customers and clients, thereby interfering with and causing damage to Plaintiff and its business relationships. Id. ¶¶ 28-30.

The undersigned, therefore, concludes that Plaintiff has stated a claim for tortious interference with business relationships.

### 5.    Count 5 – Conversion

"Conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." Spradley v. Spradley, 213 So. 3d 1042, 1044 (Fla. 2d DCA 2017) (internal quotation marks omitted); see also Warshall v. Price, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) ("Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." (internal quotation marks omitted)). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." Edwards v. Landsman, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

Defendant argues that the Complaint fails to allege that JetSmarter was permanently deprived of use of its Customer List. Defendant also asserts that Plaintiff must allege that it demanded the return of the Customer List, which Defendant failed to do. The undersigned does not agree. Defendant's arguments not only misstate Florida law, but ignore Plaintiff's factual allegations.

Florida law does not require permanent deprivation; allegations of indefinite deprivation are sufficient. See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.,

P.A., 781 F.3d 1245, 1258 (11th Cir. 2015) ("Under Florida law, 'a conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.'" (emphasis added) (brackets omitted) (quoting Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So. 2d 858, 860 (1948))). Nor does it appear that a plaintiff's demand for return and a defendant's refusal to surrender are necessary conditions for a conversion claim. See United States v. Bailey, 288 F. Supp. 2d 1261, 1275 (M.D. Fla. 2003) ("When a defendant rightfully acquires possession of a plaintiff's property, an action for conversion may arise out of the plaintiff's demand for its return and the defendant's refusal to surrender it." (emphasis added)), aff'd, 419 F.3d 1208 (11th Cir. 2005).  In any event, the Complaint makes clear that Plaintiff did demand the return of the Customer List when Defendant was terminated.  Yet Defendant has, to date, refused to do so, resulting in Plaintiff's indefinite deprivation of its proprietary information. See Complaint ¶¶ 25-28 (DE 1).  The undersigned, therefore, concludes that Plaintiff has stated a plausible claim for conversion.

> 6.    Count 6 – Theft of Trade Secrets, Florida Statutes § 688.004, Damages

The Florida Uniform Trade Secrets Act ("FUTSA"), permits a plaintiff to recover damages for misappropriation of its trade secrets. Fla. Stat. § 688.004.  In moving for dismissal, Defendant repeats the same arguments he made with respect to the federal DTSA counts, more specifically, that Plaintiff has failed to plausibly allege that Defendant misappropriated the Customer List.

The definition of "misappropriation" in the FUTSA is similar to that contained in the

DTSA. The FUTSA defines "misappropriation" as the:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent who:

1. Used improper means to acquire knowledge of the trade secret;

2. At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:

a. Derived from or through a person who had used improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Id. § 688.002(2). The statute goes on to define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Id. § 688.002(1).

For the same reasons stated with respect to Plaintiff's DTSA claims, see supra Parts IV-A-1 & IV-A-2, the undersigned concludes that Plaintiff has plausibly stated a claim for misrepresentation under the FUTSA.[6]

---

[6] For purposes of his Motion to Dismiss, Defendant does not argue that the Customer List is not a "trade secret," as that term is defined by FUTSA. See Fla. Stat. § 688.002(4).

7.    Count 7 – Theft of Trade Secrets, Florida Statutes § 688.003, Injunctive Relief

The FUTSA also permits a plaintiff to obtain injunctive relief to redress the misappropriation of its trade secrets, provided the plaintiff can establish (1) that it possessed secret information and took reasonable steps to protect its secrecy and (2) that the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (Gold, J.) (citing Fla. Stat. § 688.002). In moving for dismissal of Count 7, Defendant again raises the same arguments he made with respect to Counts 1 and 2.[7] And as he did for the DTSA counts, Defendant contends that the Complaint improperly commingles the FUTSA counts. For the same reasons that the undersigned concluded that Counts 1 and 2 should not be dismissed, and that the allegations in those Counts were not commingled, see supra Parts IV-A-1 & IV-A-2, the undersigned concludes that Count 7 plausibly states a claim for relief.

---

[7] Defendant does make one argument that is distinct to Plaintiff's FUTSA claim for injunctive relief. Specifically, Defendant asserts that Plaintiff has failed to allege that Plaintiff will suffer irreparable harm absent the injunction or that an injunction would be in the public interest. The undersigned rejects that argument. With respect to irreparable harm, the Complaint alleges that, by retaining the Customer List and using it to solicit Plaintiff's customers and clients, Defendant interfered with and caused damage to Plaintiff and its business relationships, and encroached on Plaintiff's competitive advantage in the industry. Complaint ¶¶ 15-16, 28-30 (DE 1). Finally, it is well-established under Florida law that the public interest is served by "protecting businesses from employees who misappropriate their trade secrets." VAS Aero Servs., LLC v. Arroyo, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012) (Middlebrooks, J.); see also East v. Aqua Gaming, Inc., 805 So. 2d 932, 934 (Fla. 2d DCA 2001) ("[I]t is apparent that an injunction prohibiting a former employee from using trade secrets to solicit existing customers clearly does not disserve the public interest of protecting legitimate business interests.").

8.   Count 8 – Damages for Breach of Contract

The Remedies provision of the SRA permits Plaintiff to seek "recovery of damages" from Defendant for any breach of the SRA's restrictive covenants.  SRA ¶ 11.9 (DE 1-2). Defendant argues that Plaintiff's breach of contract claim must be dismissed because the SRA is not enforceable until Defendant exercises his option to purchase JetSmarter's Common Stock and that Plaintiff has not shown that such an option was ever exercised. The undersigned, however, rejects this argument.

The SRA is enforceable by its terms, which expressly provide:

> The Stockholder agrees that at all times that the Stockholder is the <u>beneficial owner</u> of any Shares and thereafter, except in the good faith performance of his or her duties to the Corporation . . . the Stockholder shall not disclose any Confidential Information, . . . and shall not use or attempt to use any such information in any manner other than in connection with his or her Service for the Corporation. . . . Upon the Stockholder's Termination of Service, the Stockholder shall promptly supply to the Corporation all property, . . . lists, . . . <u>customer lists</u>, . . . and any other tangible product or document which has been produced by, received by or otherwise submitted to the Stockholder during or prior to his or her Service for the Corporation.

Id. ¶ 11.1 (emphasis added).  The SRA gives the term "beneficial owner" the meaning set forth in Securities and Exchange Commission Rule 13d-3, 17 C.F.R. § 240.13d-3, which defines that term for purposes of sections 13(d) and 13(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d), (g).  SRA ¶ 10.11(h) (DE 1-2).  Rule 13d-3 defines a "beneficial owner" as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or, (2) Investment power which includes the power to dispose, or to direct the disposition of, such

18

security." 17 C.F.R. § 240.13d-3(a). And a person is deemed a beneficial owner of a security "if that person has the right to acquire beneficial ownership of such security, as defined in Rule 13d-3(a) (§ 240.13d-3(a)) within sixty days, including but not limited to any right to acquire: (A) Through the exercise of any option, warrant or right . . . ." Id. § 240.13d-3(d)(1)(I).

Here, Defendant had the right to acquire ownership of Plaintiff's stock "on the last day of the twelfth month following the Date of Grant [March 1, 2016]," (Award Agreement, p. 1) (DE 1-2 at 1), and therefore by the date of his termination, June 23, 2017, he had the right to acquire ownership of shares within 60 days and was a "beneficial owner" as defined in the Award Agreement. Because the SRA is fully enforceable, Plaintiff would have breached the contract by retaining the Customer List and by using the information on the list to contact JetSmarter's current and prospective customers. Complaint ¶¶ 27-28, 49-51 (DE 1); see SRA ¶¶ 11.1, 11.2, 11.4 (DE 1-2).[8]

In sum, the undersigned concludes that Plaintiff has plausibly stated a claim for breach of contract, which, if established, would entitle it to damages.

---

[8] Defendant argues that the SRA is unenforceable because its restriction on competition is geographically overbroad. Reply at 3 (DE 18). The undersigned will not consider this argument, as it was raised for the first time in Defendant's Reply. See S.D. Fla. L.R. 7.1(c) ("The movant may . . . serve a reply memorandum in support of the motion, which reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law."); Lage v. Ocwen Loan Servicing LLC, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015) (Bloom, J.) ("[A] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." (internal quotation marks omitted)), aff'd, 839 F.3d 1003 (11th Cir. 2016) (per curiam).

9.     Count 9 – Breach of Contract, Injunctive Relief

The SRA's Remedies provision also permits Plaintiff to seek "an immediate injunction . . . to prevent such breach and/or threatened breach and/or continued breach by the Stockholder and/or any and all Persons acting for and/or with the Stockholder." SRA ¶ 11.9 (DE 1-2). Defendant again challenges the validity of the SRA and contends that Plaintiff has not plausibly pleaded a breach of that agreement. Defendant also asserts that Plaintiff has improperly commingled the allegations in Count 9 with those in Count 8. The undersigned concludes that Plaintiff has stated a claim for relief on Count 9 for the same reasons it has done so on Count 8. The undersigned also rejects Defendant's shotgun pleading argument for the reasons stated in Part IV-A-2, supra.

B.     Motion to Strike

Defendant's Motion argues, in the alternative, that the Complaint is so vague and ambiguous that Plaintiff should be ordered to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). The undersigned disagrees.

"If a pleading 'fails to specify the allegations in a manner that provides sufficient notice,' or does not contain enough information to allow a responsive pleading to be framed, the proper motion to be filed is a motion for a more definite statement." Nelson v. Blue Eyed Holdings, Inc., 2013 WL 6238056, at * 3 (S.D. Fla. Apr. 3, 2013) (Marra, J.) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). Motions for a more definite statement, however, are disfavored. Campbell v. Miller, 836 F. Supp. 827, 832 (M.D. Fla. 1993). A more definite statement will be required only when "the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." Ruiz v. Motorola Sols., Inc., 2014 WL

11706425, at *1 (S.D. Fla. July 14, 2014) (Cohn, J.) (internal quotation marks omitted).

The undersigned has concluded that Plaintiff has plausibly stated claims for relief as to each Count. And in doing so, the undersigned found that Plaintiff did not file a shotgun complaint. Moreover, the undersigned finds that Plaintiff's allegations are extremely thorough and contain more than enough information to allow Defendant to frame a responsive pleading. The undersigned, therefore, finds no merit to Defendant's argument that Plaintiff should be directed to file a more definite statement.

V.    CONCLUSION

For the reasons stated, the undersigned respectfully RECOMMENDS that Defendant's Motion to Dismiss and/or for More Definite Statement (DE 12) be DENIED.

The parties will have five (5) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge, and the parties shall have five (5) days to respond to any objections filed.[9] Failure to file objections timely shall bar the

---

[9] Generally, parties are afforded fourteen (14) days after service of a magistrate judge's report and recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C). However, where exigencies exist, a court may shorten the time for filing objections. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (holding that trial court did not err in providing parties less than the then full ten-day period to file objections to the magistrate's report and recommendation where exigencies existed, stating that then "[t]en days is a maximum, not a minimum"); Hispanic Counseling Ctr., Inc. v. Incorporated Village of Hemptstead, 237 F. Supp. 2d 284, 289-90 (E.D.N.Y. 2002) (court may shorten time period for filing objections where exigencies exist); see also Magistrate Judge Rule 4(b), S.D. Fla. L.R. ("Any party may object to a Magistrate Judge's proposed findings, recommendations or report [regarding a case-dispositive motion] within fourteen (14) days after being served with a copy thereof, or within such other time as may be allowed by the Magistrate Judge or District Judge."). Exigencies exist in this case as the undersigned finds that Defendant is continuing to breach his confidentiality agreement and solicit Plaintiff's members on behalf of a competing company, thereby jeopardizing Plaintiff's goodwill and competitive advantage.

parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2017).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 6ᵗʰ day of April 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable Federico A. Moreno
United States District Judge

All counsel of record